Forrest G. Buffington
New Mexico State Bar No.: 364
P.O. Box 30745
Albuquerque, NM 87190
505-884-0004
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ERNESTINE YAZZIE AS WRONGFUL**
**DEATH PERSONAL REPRESENTATIVE**
**OF CARLOS THOMAS YAZZIE, DECEASED**

      **Plaintiff,**

    **v.**                    **No. _____**

**THE UNITED STATES OF AMERICA**

      **Defendant.**

### COMPLAINT FOR DAMAGES UNDER
### THE FEDERAL TORT CLAIMS ACT

For her claim, Plaintiff avers:

### OVERVIEW

1.     This is a civil action against The United States of America arising from the death of Carlos Yazzie on or about 11 January 2017. Carlos Yazzie was arrested by an officer or officers of the Navajo Nation Police Department, in or near Shiprock, New Mexico, and jailed by the Navajo Nation Department of Corrections, and died as a result of acute ethanol poisoning or asphyxia as a consequence of the negligent decisions, acts, and omissions of the law enforcement agencies involved in Carlos Yazzie's arrest and detention. It is believed and alleged that the personnel involved in the arrest and detention of Carlos Yazzie were either employees of the Navajo Nation as police officers of the Navajo Nation Division of Public Safety, or of the Navajo Nation Department of Corrections, tribal programs funded by the United States Bureau

of Indian Affairs within the Department of Interior, under the Indian Self-Determination and Educational Assistance Act, Public Law 96-638, acting within the course and scope of the said contract and in the course and scope of employment.  The defendant United States is answerable for the negligent decisions, acts, and omissions alleged herein, pursuant to Public Law 93-638 and the Federal Tort Claim Act (FTCA), 28 USC §1346(b), and 28 U.S.C. §2671, et seq., and also pursuant to 28 U.S.C. §1331.

This suit is brought by Ernestine Yazzie, as the wrongful death personal representative of Carlos Thomas Yazzie, deceased.

## JURISDICTION UNDER THE
## FEDERAL TORT CLAIMS ACT

2.      This complaint is brought against the United States of America (hereinafter "United States") pursuant to the provisions of the Federal Tort Claims Act ("FTCA"), 25 U.S.C. §1346 (b) and 28 U.S.C. §2761, and also pursuant to 28 U.S.C. 1331.  The FTCA vests this court with exclusive jurisdiction over plaintiff's claim against the United States for the negligent acts and omissions of its "employees", which includes the employees of the Navajo Nation Division of Public Safety and the Navajo Nation Department of Corrections.

3.      The persons who arrested and detained Carlos Yazzie were "employees of the government" within the meaning of 28 U.S.C. §2671 acting in the course and scope of their employment as agents, servants, and employees of the United States at all times relevant to the arrest and detention of Carlos Yazzie.

4.      At all times material hereto, defendant United States authorized and funded the Navajo Nation Division of Public Safety and Navajo Nation Department of Corrections pursuant to a contract with the United States authorized under the Indian Self-Determination and Educational Assistance Act, Public Law 93-638 (25 U.S.C §450 *et seq*.).

5.      In connection with the acts and omissions complained of herein, any employees of the Navajo Nation Division of Public Safety or the Navajo Nation Department of Corrections were acting pursuant to the aforesaid contract between the United States and the Navajo Nation, in the course and scope of their respective employments.

6.      In connection with the acts and omissions complained of herein, all police and detention officers involved in the arrest and detention of Carlos Yazzie were agents and employees of the United States, acting in the course and scope of their employment.

7.      In accordance with Public Law 93-638, or Public Law 100-297, or both, the Navajo Nation Division of Public Safety is deemed to be an agency or instrumentality of the United States for the purpose of FTCA liability.

8.      The United States is the proper defendant for tort claims against the Navajo Division of Public Safety and the Navajo Nation Department of Corrections and their employees for acts and omissions under their contract pursuant to Public Law 93-638 under 28 U.S.C. §2674.

9.      Plaintiff submitted timely administrative claims to the United States Department of the Interior under the FTCA for damages. (Exhibit 1 Federal Form 95, Exhibit 2 USPS Certified Mail Return Receipt, and Exhibit 3, envelope exterior). The claims sought damages, as required by federal law, for sums certain, for the death of Carlos Yazzie.  The Department of the Interior has for six months failed to act upon the claims. Plaintiff has exhausted her administrative remedies as required by the FTCA and has timely filed her complaint. *See,* 28 U.S.C. §2401(b) and 39 C.F.R. §912.9.  Plaintiffs are thus authorized by federal law to file this action against the United States at this time and this court has jurisdiction to entertain the action. There are no defects of jurisdiction and no failure to exhaust administrative remedies.

3

## **PARTIES**

10.      Plaintiff Ernestine Yazzie is a resident of New Mexico.

11.      At the time of his death, Carlos Yazzie was married to plaintiff Ernestine Yazzie and without issue.

12.      The Navajo Division of Public Safety and the Navajo Nation Department of Corrections are governmental departments within the Navajo Nation that provide police and jail services to the Navajo Nation. They are operated by the Navajo Nation under contract with the United States Department of the Interior pursuant to a contract authorized under the Indian Self-Determination and Educational Assistance Act, Public Law 93-638 (25 U.S.C. § 450 *et seq.*).

13.      All acts and omissions complained of herein occurred in Navajo Indian Country in the State of New Mexico.

14.      The arrest of Carlos Yazzie occurred at or near Shiprock, New Mexico.

15.      The negligence of employees of the Navajo Nation Division of Public Safety and the Navajo Nation Department of Corrections acting pursuant to a contract pursuant to Public Law 93-638, is imputed to the United States to the same extent as if they, and it, were private persons subject to the laws of the State of New Mexico, pursuant, inter alia, to 28 U.S.C. §1346 (b); Public Law 93-638; and Public Law 10-297, the United States is similarly liable for the negligent acts and omissions of the employees of the Navajo Nation Division of Public Safety and the Navajo Nation Department of Corrections for the negligent hiring, training and supervision of the employees who arrested and detained Carlos Yazzie.

**VENUE**

16.     All events complained of herein occurred in the State of New Mexico.  Venue in this district is proper pursuant to 28 U.S.C. §1402 (b).

**FACTS OF THE OCCURRENCE**

17.     On or about 11 January 2017, Carlos Yazzie was arrested for public intoxication in or near Shiprock, New Mexico, by officers of the Navajo Nation Department of Public Safety.

18.     On the same date, subsequent to his arrest, Carlos Yazzie was transported to jail, by officers of the Navajo Nation Department of Public Safety.

19.     At and immediately after the time of his arrest, Carlos Yazzie was acutely intoxicated.

20.     It was, or should reasonably have been, apparent to the officers arresting, restraining and transporting Carlos Yazzie that he was acutely intoxicated, and to a degree that required immediate medical assessment and intervention or at a minimum, monitoring.

21.     It was, or should reasonably have been apparent, to the officers arresting, restraining and transporting Carlos Yazzie, that Carlos Yazzie was at risk from asphyxia and acute ethanol poisoning.

22.     Medical assessment and intervention were available at approximately five minutes' distance, at the Northern Navajo United States Public Health Service contract hospital.

23.     Notwithstanding Carlos Yazzie's apparent need for, and the proximity of, medical assessment and intervention, the officers arresting and detaining Carlos Yazzie, booked him into jail.

24.     It was or should have been apparent to the detention officers of the Navajo Nation Department of Corrections that Carlos Yazzie was acutely intoxicated, and required medical

1  assessment, or at a minimum, continual observation and monitoring, none of which was

2  provided.

3      25.      Carlos Yazzie suffered death from acute ethanol poisoning and died in jail.

## COUNT I.
## NEGLIGENCE

6      26.      Paragraphs one through twenty-five are incorporated by reference.

7      27.      The law enforcement officers and jail personnel who arrested and detained Carlos

8  Yazzie knew, or reasonably should have known that Carlos Yazzie was at risk of death from

9  ethanol intoxication.

10      28.      The law enforcement and jail personnel who arrested and detained Carlos Yazzie

11

12  knew, or reasonably should have known, they had a duty to have Carlos Yazzie medically

13  assessed or screened.

14      29.      Instead, Carlos Yazzie was booked into jail without medical screening, and was

15  not monitored or observed, and died.

16      30.      Notwithstanding the risks to Carlos Yazzie, the law enforcement and jail

17

18  personnel who arrested and detained him negligently failed to observe him and failed to secure

19  medical assessment or treatment for him when they knew or should have known he required

20  medical attention or assessment.

21      31.      The death of Carlos Yazzie from acute ethanol intoxication was foreseeable.

22

23      32.      As a direct and proximate result of the actions, and inactions of the law

24  enforcement personnel who arrested and detained Carlos Yazzie, he died of acute ethanol

25  intoxication.

## NEGLIGENT TRAINING, ADMINISTRATION
## AND SUPERVISION

28      33.      Paragraphs one through thirty-two are incorporated by reference herein.

34.     The Navajo Nation Division of Public Safety and the Navajo Nation Department of Corrections had a duty to train their respective officers and employees in the dangers presented by acute ethanol intoxication, and to adopt and enforce policies designed to prevent death due to ethanol intoxication.

35.     The Navajo Nation Division of Public Safety and the Navajo Nation Department of Corrections knew or should have known of the dangers presented by acute ethanol intoxication.

36.     Acute ethanol intoxication is a reoccurring and common occurrence for law enforcement and jail agencies in the area of Shiprock, New Mexico.

37.     Notwithstanding their knowledge of the dangers to arrested persons of acute ethanol intoxication, the Navajo Nation Division of Public Safety and the Navajo Nation Department of Corrections negligently failed to train and supervise the personnel who arrested Carlos Yazzie in the dangers of acute ethanol intoxication, and prevention of death arising therefrom, and failed to make, adopt, and enforce standards to avoid death from acute ethanol poisoning.

38.     As a consequence of the above-alleged failure to train and supervise in the dangers of acute ethanol intoxication and to make, adopt and enforce standards to prevent the same, Carlos Yazzie died.

## DAMAGES

39.     Paragraphs one through thirty-eight are incorporated by reference.

40.     As a direct and proximate result of the death of Carlos Yazzie, Plaintiff has suffered and will continue in the future to suffer losses and damages, including but not limited to; the loss of Carlos Yazzie's love, affection, companionship, care, protection, and guidance;

1   pain, grief, sorrow, anguish, stress, shock an mental suffering; loss of income and services; and

2   the expense of funeral and burial.

3          WHEREFORE, Plaintiff prays for judgment against the United States for such damages

4   as are available to her under the law of New Mexico, costs of suit, and such other and further

5   relief as to which the law and proof shall deem her entitled.

6

7                                   *Respectfully Submitted By:*

8                                   **BARBER & BORG, LLC**

9
                                    By: */s/ Forrest G. Buffington*
10                                       Forrest G. Buffington
                                         P.O. Box 30745
11                                       Albuquerque, NM 87190
                                         505-884-0004
12                                       505-884-0077 (Fax)
                                         *Attorney for Plaintiff*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Ryan Zinke, Secretary of the Department of the Interior<br>Department of the Interior<br>1849 C Street NW<br>Washington, D.C. 20240 | Ernestine Yazzie          Barber & Borg,LLC<br>P.O. Box 16                 P.O. Box 3830<br>Fruitland, NM 87416   Shiprock, NM 87420<br>                                    Forrest G. Buffington, Esq. |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 04/03/1972 | Widowed | 01/11/2017 | Wednesday | 10:07 a.m. |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

Claimant is the surviving spouse of Carlos Tom Yazzie, the decedent herein.  Decedent was childless at the time of his death.  This claim is brought against the United States, pursuant to a contract or contracts between the United States and the Navajo Nation for the provision of law enforcement and detention services on the Navajo Nation pursuant to the Indian Self-Determination Act.  It is believed that all actions of the Navajo Nation complained of were pursuant to the Indian Self-Determination Act and the contract above noted.   SEE ATTACHMENT # 8 BASIS OF CLAIM continued.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

Not applicable.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Not applicable.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM.  IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See #8:  Basis of Claim. See also enclosed autopsy report and funeral itemization.

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| Ernestine Yazzie (Claimant) | P.O. Box 16 Fruitland, NM 87416 |
| NNPD Officer Louis St. Germaine | Navajo Nation Police Department Window Rock, Arizona |
| NNPD Supervisor Ron Silversmith | Navajo Nation Police Department Window Rock, Arizona |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | 0.00 | 1,500,000 | 1,500,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *[signature]* | 505·278·1010 | 10·29·2018 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government.  (See 31 U.S.C. 3729). | Fine, Imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

Not applicable.

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

Not applicable.

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a)  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b)  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c)  In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d)  Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A.  *Authority*: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose*:  The information requested is to be used in evaluating claims.
C.  *Routine Use*:  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond*:  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is *solely* for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

#8 Basis of Claim Continued.

On the 11th day of January 2017, Carlos Tom Yazzie was arrested by an officer, or officers, of the Navajo Nation Police Department for the offense of public intoxication and jailed at a facility operated by the Navajo Nation Department of Corrections. At the time of his arrest, he was in an acutely intoxicated condition. On the morning of January 11, 2017, he was discovered in the jail, dead. Subsequent autopsy disclosed that he had died of acute ethanol intoxication.

Information between the time of his death and his autopsy has been actively suppressed by the Federal Bureau of Investigation (FBI) and the Navajo Nation Police Department (NNPD). Claimant or her representatives have requested reports concerning decedent's death from the FBI and NNPD by mail on August 2, 2017, and December 12, 2017, by two voice messages with the FBI and with NNPD on December 27, 2017 and January 4, 2018. To date, no reports have been received, however, NNPD Criminal Investigator, Louis St. Germaine confirmed that this was an in-custody death investigated by NNPD and the FBI and that his report and video pertaining to the incident existed.

Thus, Claimant's bases for recovery are necessarily limited; however, based upon information derived from the autopsy report and the circumstances known to claimant, claimant's decedent died as a result of the negligent failure of the NNPD and the Navajo Nation Department of Corrections to recognize that decedent's acute ethanol intoxication as a medical emergency and secure prompt medical intervention; or, at a minimum, monitor him for signs of distress, or to properly position him given his weight and size. Likewise, claimant believes that NNPD and the Navajo Nation Department of Corrections lacked or failed to follow policies which would have identified acute intoxication as a medical emergency requiring prompt medical attention, or at a minimum, monitoring.

As communicated by NNPD to the New Mexico Office of Medical Investigator in anticipation of autopsy, the decedent was taken into custody intoxicated and argumentative and placed in a single occupancy cell at 1:15 a.m., and subsequently unmonitored until 7:15 a.m., and found unresponsive lying on his left side at 7:38 a.m. According to the autopsy report, his blood alcohol of 0.361 g/100mL had the potential to be lethal and would have been significantly higher at the time of his incarceration. As a consequence, decedent died.

This form (Form 95) is formal notice of a claim, as required by federal law. It is not a pleading and is intended to be interpreted liberally in view of the fact that claimant has limited information about the claim and that much of the necessary information is in the hands of the FBI and the NNPD. There may be other, unspecified, negligent acts or omissions, which have not been precisely identified at this time, but which are part of the

sequence of events from which the claim arises. Some acts or omissions may pre-date the date stated on this form and some may have come afterward, but they are interrelated. All negligent acts and omissions related to the stated claim are hereby included in the tort notice, including, if appropriate, failure to transfer in a safe, reasonable, and timely manner, failure to communicate, failure to assess, failure to monitor, negligent hiring, training, supervision, and retention. Claimant has requested, decedent's medical records but has not received them despite numerous requests made to an Indian Health facility that is oversee by another government agency, the Department of Health and Human Services.  Litigation and Discovery may add clarity and precision to the claim.  It is felt that the notice provided, and the information given is sufficient under law to allow the government to conduct its own investigation of the circumstances of the claim.


#11 Witnesses Continued.

Currently unknown investigators with the FBI.
Currently other unknown investigators with the NNPD.
Shiprock jail personnel.
Medical personnel at the Northern Navajo Medical Center.
Ian Paul, M.D. Office of the Medical Investigatory, UNM Health Sciences Center



# UNM HEALTH SCIENCES CENTER | OFFICE *of the* MEDICAL INVESTIGATOR

## Report of Findings

**RECEIVED**
AUG 2 1 2017
BY: .............................

Case Number: 2017-00219

### YAZZIE, CARLOS

**County Pronounced:** San Juan
**Law Enforcement:** FBI
**Agent:** Monty Walden
**Date of Birth:** 4/3/1972
**Pronounced Date/Time:** 1/11/2017 10:07:00 AM
**Central Office Investigator:** Rhonda Moya
**Deputy Field Investigator:** Larkins, Harold

**CAUSE OF DEATH**

Acute ethanol toxicity

**MANNER OF DEATH**

Accident

**Lauren Edelman, MD**

Forensic Pathology Fellow

**Ian Paul MD**

Director of the Pathology Residency training program and the Forensic Pathology Fellowship training program, Associate Professor of Pathology

All signatures authenticated electronically

Date: 3/22/2017 10:01:47 AM

| Case Number: | **2017-00219** | **Summary Opinion** | **YAZZIE, CARLOS** |

| **Medical Investigator** | **Medical Investigator Trainee** |
| Ian Paul MD | Lauren Edelman, MD |

## SUMMARY AND OPINION

PATHOLOGIC DIANGOSES:

I. Acute ethanol toxicity
    a. Postmortem toxicology positive for ethanol
    b. Pulmonary edema
    c. Cerebral edema
    d. Hypoxic-ischemic changes of the brain
II. Stigmata of chronic ethanol use
    a. Cardiomegaly, 520 grams
    b. Dilated cardiomyopathy
    c. Steatohepatitis
        i. Hepatomegaly, 2385 grams
        ii. Cirrhosis
III. Scattered abrasions and contusions of the head and extremities
IV. Obesity, body mass index = 32.73

SUMMARY AND OPINION:

This 44-year-old man, Mr. Carlos Yazzie, died of acute ethanol (alcohol) toxicity.

According to reports, he was taken into custody by law enforcement who noted he was intoxicated and argumentative. As a result, he was placed in a single occupancy cell at approximately 1:15 am on January 11, 2017. He was subsequently unmonitored until 7:15 am when he was found unresponsive, lying on his left side. Attempts at cardiopulmonary resuscitation were unsuccessful, and he was declared dead by medics at 7:38 am.

Autopsy examination revealed an obese man with minor scratches and abrasions of the face and extremities. There were small collections of blood in a muscle in the left side of the neck, the side on which he was found, which without other evidence of injury most likely represent pooling of the blood after death.

The brain and lungs contained excess fluid (edema). Although these are non-specific findings, they are commonly seen in cases of ethanol toxicity. There was also evidence of decreased oxygen delivery to the brain (hypoxic-ischemic changes).

The heart was enlarged (cardiomegaly) and the chambers were stretched (dilated cardiomyopathy). The liver was enlarged (hepatomegaly), contained excess fat and inflammation (steatohepatitis), and was scarred (cirrhosis). These changes are commonly seen in people who are chronic ethanol users.

Postmortem vitreous chemistry studies were unremarkable.

Postmortem toxicology of the femoral blood and urine revealed an elevated blood alcohol concentration of 0.361 g/100 mL. This level in and of itself has the potential to be lethal, even in a person who is a chronic ethanol user and has developed tolerance over time. Additionally, given that this level was identified in a sample taken at least six hours after he last ingested ethanol, his blood alcohol level would have been significantly higher at the time of his incarceration.

Very high levels of ethanol can shut down critical areas of the brain that control breathing, heart rate, and body temperature, resulting in death.

The manner of death is certified as accident.



# DEATH INVESTIGATION SUMMARY

Case Number: 2017-00219

YAZZIE, CARLOS

**County Pronounced:** San Juan
**Law Enforcement:** FBI
**Agent:** Monty Walden
**Date of Birth:** 4/3/1972
**Pronounced Date/Time:** 1/11/2017 10:07:00 AM
**Central Office Investigator:** Rhonda Moya
**Deputy Field Investigator:** Larkins, Harold

## CAUSE OF DEATH

Acute ethanol toxicity

## MANNER OF DEATH

Accident

**Lauren Edelman, MD**
Forensic Pathology Fellow

**Ian Paul MD**
Director of the Pathology Residency training program and the Forensic Pathology Fellowship training program, Associate Professor of Pathology

All signatures authenticated electronically
Date: 3/22/2017 10:01:47 AM

## DECLARATION

The death of YAZZIE, CARLOS was investigated by the Office of the Medical Investigator as a consultation and not under the statutory authority of the Office of the Medical Investigator.

I, Ian Paul MD, a board certified anatomic and forensic pathologist licensed to practice pathology in the State of New Mexico, do declare that I personally performed or supervised the tasks described within this Death Investigation Summary document. It is only after careful consideration of all data available to me at the time that this report was finalized that I attest to the diagnoses and opinions stated herein.

Numerous photographs were obtained along the course of the examination. I have personally reviewed those photographs and attest that they are representative of findings reported in this document.

This document is divided into 8 sections with a final Procedural Notes section:

1. Summary and Opinion
2. External Examination
3. Medical Intervention
4. Postmortem Changes
5. Evidence of Injuries
6. Internal Examination
7. Microscopy
8. Ancillary Lab Studies

Should you have questions after review of this material, please feel free to contact me at the Office of the Medical Investigator (Albuquerque, New Mexico) - 505-272-3053.

| Case Number: | 2017-00219 | Summary Opinion | YAZZIE, CARLOS |
|---|---|---|---|

| Medical Investigator | Medical Investigator Trainee |
|---|---|
| Ian Paul MD | Lauren Edelman, MD |

## SUMMARY AND OPINION

PATHOLOGIC DIANGOSES:

I. Acute ethanol toxicity
    a. Postmortem toxicology positive for ethanol
    b. Pulmonary edema
    c. Cerebral edema
    d. Hypoxic-ischemic changes of the brain
II. Stigmata of chronic ethanol use
    a. Cardiomegaly, 520 grams
    b. Dilated cardiomyopathy
    c. Steatohepatitis
        i. Hepatomegaly, 2385 grams
        ii. Cirrhosis
III. Scattered abrasions and contusions of the head and extremities
IV. Obesity, body mass index = 32.73

SUMMARY AND OPINION:

This 44-year-old man, Mr. Carlos Yazzie, died of acute ethanol (alcohol) toxicity.

According to reports, he was taken into custody by law enforcement who noted he was intoxicated and argumentative. As a result, he was placed in a single occupancy cell at approximately 1:15 am on January 11, 2017. He was subsequently unmonitored until 7:15 am when he was found unresponsive, lying on his left side. Attempts at cardiopulmonary resuscitation were unsuccessful, and he was declared dead by medics at 7:38 am.

Autopsy examination revealed an obese man with minor scratches and abrasions of the face and extremities. There were small collections of blood in a muscle in the left side of the neck, the side on which he was found, which without other evidence of injury most likely represent pooling of the blood after death.

The brain and lungs contained excess fluid (edema). Although these are non-specific findings, they are commonly seen in cases of ethanol toxicity. There was also evidence of decreased oxygen delivery to the brain (hypoxic-ischemic changes).

The heart was enlarged (cardiomegaly) and the chambers were stretched (dilated cardiomyopathy). The liver was enlarged (hepatomegaly), contained excess fat and inflammation (steatohepatitis), and was scarred (cirrhosis). These changes are commonly seen in people who are chronic ethanol users.

Postmortem vitreous chemistry studies were unremarkable.

Postmortem toxicology of the femoral blood and urine revealed an elevated blood alcohol concentration of 0.361 g/100 mL. This level in and of itself has the potential to be lethal, even in a person who is a chronic ethanol user and has developed tolerance over time. Additionally, given that this level was identified in a sample taken at least six hours after he last ingested ethanol, his blood alcohol level would have been significantly higher at the time of his incarceration.

Very high levels of ethanol can shut down critical areas of the brain that control breathing, heart rate, and body temperature, resulting in death.

The manner of death is certified as accident.

| Case Number: | **2017-00219** | **External Examination** | **YAZZIE, CARLOS** |

| Medical Investigator | Medical Investigator Trainee |
|---|---|
| Ian Paul MD | Lauren Edelman, MD |

| | |
|---|---|
| **External exam date time:** | 1/12/2017 9:30:00 AM |
| **Authority for examination:** | OMI |
| **ID confirmed at time of exam:** | Yes |
| **Means used to confirm identity:** | Visual |
| **Other verification means:** | |
| **Location of orange bracelet:** | Right wrist |
| **Name on orange bracelet:** | Decedent name |
| **Other name on orange bracelet:** | |
| **Location of green bracelet:** | Right wrist |
| **Name on green bracelet:** | Decedent name |
| **Other name on green bracelet:** | |
| **Hospital ID tags or bracelets?** | No |
| **If yes specify stated name and location:** | |
| **Body length (cm):** | 183.00 |
| **Body weight (kgs):** | 109.60 |
| **BMI:** | 32.73 |

| | |
|---|---|
| **Development:** | Well-developed |
| **Development comments:** | |
| **Stature:** | Obese |
| **Age:** | Appears to be stated age |
| **Anasarca:** | No |
| **Edema localized:** | No |
| **Dehydration:** | No |
| **Scalp hair color:** | Brown |
| **Scalp hair length:** | Short |
| **Eyes:** | Both eyes present |
| **Irides:** | Brown |
| **Eyes corneae:** | Clouded |
| **Eyes sclerae:** | Congested |
| **Eyes conjunctivae:** | Other |
| **Eyes petechiae:** | No |
| **Palpebral petechiae:** | No |
| **Bulbar petechiae:** | No |
| **Facial petechiae:** | No |
| **Oral mucosal petechiae:** | No |
| **Petechiae comments:** | There is profound palpebral and bulbar subconjunctival edema. |

| Case Number: | 2017-00219 | **External Examination** | YAZZIE, CARLOS |
|---|---|---|---|

| | |
|---|---|
| Nose: | Normally formed |
| Ears: | Normally formed |
| Lips: | Normally formed |
| Facial comments: | |
| There is suffusion of the face and neck. | |
| Facial hair: | Moustache |
| Facial hair color: | Brown |
| Maxillary dentition: | Natural |
| Mandibular dentition: | Natural |
| Condition of dentition: | Adequate |
| Neck: | Unremarkable |
| Trachea midline: | Yes |
| Chest development: | Normal |
| Chest symmetrical: | Yes |
| Chest diameter: | Appropriate |
| Abdomen: | Obese |
| Anus: | Unremarkable |
| Back: | Unremarkable |
| Spine: | Normal |
| External genitalia: | Male |
| Breast development: | None |
| Breast masses: | None |
| Right hand digits complete: | Yes |
| Left hand digits complete: | Yes |
| Right foot digits complete: | Yes |
| Left foot digits complete: | Yes |
| Extremities: | Well-developed and symmetrical |
| Muscle group atrophy: | No |
| Senile purpura: | No |
| Pitting edema: | No |
| Muscle other: | No |

**Tattoo(s)**

| | |
|---|---|
| Tattoos present: | Yes |
| Tattoo right hand: | Yes |
| Tattoo left hand: | Yes |

**Cosmetic Piercing(s)**

| | |
|---|---|
| Cosmetic piercing present: | No |

**Scar(s)**

| | |
|---|---|
| Scar(s) present: | Yes |
| Scar right arm: | Yes |

| Case Number: | 2017-00219 | **External Examination** | YAZZIE, CARLOS |
|---|---|---|---|
| Scar right knee: | Yes | | |
| Scar right foot: | Yes | | |
| Scar left thigh: | Yes | | |
| Scar left lower leg: | Yes | | |

**Reporting Tracking**

| | |
|---|---|
| Reported by: | Lauren Edelman, MD |
| Verified by: | Ian Paul MD on 3/22/2017 9:56:39 AM |
| Reviewed and approved by: | Ian Paul MD on 3/22/2017 10:01:47 AM |

| Case Number: | **2017-00219** | **Medical Intervention** | **YAZZIE, CARLOS** |
|---|---|---|---|

| Medical Investigator | Medical Investigator Trainee |
|---|---|
| Ian Paul MD | Lauren Edelman, MD |

| **Evidence of medical intervention:** | Yes |
|---|---|

### Indwelling Tubes

| **If nasogastric tube present, specify course and position:** | No |
|---|---|
| **If endotracheal tube present, specify course and position:** | No |
| **Tracheostomy site/tube:** | No |
| **Mediastinal tube(s):** | No |
| **Chest tube(s):** | No |
| **If Foley catheter present, specify course and position:** | No |

### Electrocardiogram (ECG) Monitoring Pads

| **ECG Monitoring Pads Present?:** | Yes |
|---|---|
| **ECG shins pads:** | Yes |
| **ECG other  pads:** | Yes |
| **Other pads comments:** | |

ECG Wrist and Back Pads

### Defibrillator Pads

| **Defibrillator pads present?:** | No |
|---|---|

### Vascular Catheter(s):

| **Vascular catheter(s):** | No |
|---|---|

### Recent Surgical Intervention

| **Evidence of recent surgical intervention:** | No |
|---|---|

### Report Tracking

| **Reported by:** | Lauren Edelman, MD |
|---|---|
| **Verified by:** | Ian Paul MD on 3/22/2017 9:57:35 AM |
| **Reviewed and approved by:** | Ian Paul MD on 3/22/2017 10:01:47 AM |

| Case Number: | 2017-00219 | Postmortem Changes | YAZZIE, CARLOS |
|---|---|---|---|

| Medical Investigator | Medical Investigator Trainee |
|---|---|
| Ian Paul MD | Lauren Edelman, MD |

| | |
|---|---|
| **External exam date:** | 1/12/2017 9:30:00 AM |
| **Body temperature:** | Cool subsequent to refrigeration |
| **Rigor mortis:** | Fully fixed |
| **Livor mortis - color:** | Purple |
| **Livor mortis - fixation (if applicable):** | Fully Fixed |
| **Livor mortis - position (if applicable):** | Posterior |
| **Livor mortis - blanching and patterns (if applicable):** | |

Tardeau spots are present on the upper back.

| | |
|---|---|
| **State of preservation:** | No decomposition |

### Report Tracking

| | |
|---|---|
| **Reported by:** | Lauren Edelman, MD |
| **Verified by:** | Ian Paul MD on 3/22/2017 9:56:52 AM |
| **Reviewed and approved by:** | Ian Paul MD on 3/22/2017 10:01:47 AM |

| Case Number: | 2017-00219 | Evidence of Injury | | YAZZIE, CARLOS |

| Medical Investigator | Medical Investigator Trainee |
|---|---|
| Ian Paul MD | Lauren Edelman, MD |

**Are there any Injuries:** Yes

### Evidence of Injury:

**Autopsy date:** 1/12/2017 9:21:00 AM

| # | Injury | Location | Injury Description |
|---|---|---|---|
| 1 | Blunt injury | Head | There are two (2), 0.4 x 0.2 cm red, ovoid abrasions of the left cheek. |
| | | | There is a 2.0 x 3.0 cm ovoid frontal subscalpular hematoma. There is no associated external injury. |
| 2 | Blunt injury | Extremities | There is an 11.0 cm linear, red abrasion of the right anterior arm. |
| | | | There is a 1.5 x 1.0 cm blue, ovoid contusion with an adjacent 0.7 x 0.9 cm red, linear abrasion of the right distal anterior forearm. |
| | | | There is a 2.0 x 2.0 cm blue, circular contusion of the right posterior arm. |
| | | | There are several blue, circular contusions of the posterior left leg ranging in size from 2.0 to 4.0 cm in greatest dimension. |
| | | | There is a 2.0 x 1.0 cm red, crusted, ovoid abrasion of the left knee. |
| 3 | Other | Extremities | A 0.3 x 0.3 cm area with pinpoint circular scars is present on the right and left antecubital fossae. There are no recent puncture marks present. |
| 4 | Other | Neck | There is a 0.5 x 0.5 cm area of hemorrhage of the left proximal sternocleidomastoid muscle. There is no associated overlying external injury and no other injury to the structures of the neck. |

### Report Tracking

| Reported by: | Lauren Edelman, MD |
|---|---|
| Verified by: | Ian Paul MD on 3/22/2017 9:56:15 AM |
| Reviewed and approved by: | Ian Paul MD on 3/22/2017 10:01:47 AM |

| Case Number: | **2017-00219** | **Internal Examination** | **YAZZIE, CARLOS** |

| Medical Investigator | Medical Investigator Trainee |
|---|---|
| Ian Paul MD | Lauren Edelman, MD |

| | |
|---|---|
| **Date of Autopsy:** | 1/12/2017 9:21:00 AM |
| **Date of Internal Exam:** | 1/12/2017 9:30:00 AM |

### BODY CAVITIES

| | |
|---|---|
| **Chest cavities examined:** | Yes |
| **See evidence of injury section** | No |
| **Organs in normal anatomic position** | Yes |
| **Other organ position comments** | |
| **Diaphragm:** | Intact |
| **Serosal surfaces:** | Smooth and glistening except for areas with adhesions (see comments) |
| **Body cavity adhesions present:** | Yes |
| **Adhesions - left chest cavity:** | Yes |
| **Fluid accumulation present:** | No |

**Body cavity other comments:**

There are focal areas of adhesion in the left chest cavity.

### HEAD

| | |
|---|---|
| **Brain examined:** | Yes |
| **See separate forensic neuropathology consultation report** | No |
| **See evidence of injury section:** | No |
| **See evidence of medical intervention section:** | No |
| **See postmortem changes section:** | No |
| **Brain fresh (g):** | 1405 |
| **Brain fixed (g):** | |
| **Facial skeleton:** | No palpable fractures |
| **Calvarium:** | No fractures |
| **Skull base:** | No fractures |
| **Skull comments:** | |
| **Dura mater:** | Unremarkable and without masses |
| **Dural venous sinsuses:** | Patent |
| **Leptomeninges:** | Thin and transparent |
| **Epidural hemorrhages / hematomas:** | Absent |
| **Subdural hemorrhages / hematomas:** | Absent |
| **Subarachnoid hemorrhages:** | Absent |
| **Cerebral hemispheres:** | Symmetrical |
| **Gyral and sulcal patterns:** | Unremarkable |

| Case Number: | 2017-00219 | Internal Examination | YAZZIE, CARLOS |
|---|---|---|---|

| | |
|---|---|
| Gyral convolutions and sulci: | Mild widening and flattening of gyri and mild narrowing of sulci |
| Uncal processes: | Unremarkable |
| Cerebellar tonsils: | Unremarkable |
| Cranial nerves: | Unremarkable |
| Basilar arterial vasculature: | Unremarkable |
| Cerebral cortex: | Unremarkable |
| White matter: | Unremarkable |
| Corpus callosum: | Unremarkable |
| Deep gray matter structures: | Unremarkable |
| Brainstem: | Unremarkable |
| Cerebellum: | Unremarkable |

### Spinal Cord

| | |
|---|---|
| Spinal cord examined: | No |

### Middle Ears

| | |
|---|---|
| Middle ears examined: | No |

### Neck

| | |
|---|---|
| Neck examined: | Yes |
| See Evidence of Injury section: | Yes |
| See Evidence of Medical Intervention section | No |
| See Postmortem Changes section: | No |
| Subcutaneous soft tissues: | Unremarkable |
| Strap muscles: | See Evidence of Injury |
| Jugular veins: | Unremarkable |
| Carotid arteries: | Unremarkable |
| Tongue: | Unremarkable |
| Epiglottis: | Unremarkable |
| Hyoid bone: | Unremarkable |
| Larynx: | Unremarkable |
| Palatine tonsils: | Not examined |

### CARDIOVASCULAR SYSTEM

| | |
|---|---|
| Heart examined: | Yes |
| See separate Cardiovascular Pathology report: | No |
| See Evidence of Injury section: | No |
| See Evidence of Medical Intervention section: | No |
| See Postmortem Changes section: | No |

### Heart

| | |
|---|---|
| Right coronary ostium position: | Normal |
| Left coronary ostium position: | Normal |
| Supply of the posterior myocardium: | Right coronary artery |
| Heart fresh (g): | 520.0 |

| Case Number: | 2017-00219 | **Internal Examination** | YAZZIE, CARLOS |
|---|---|---|---|

Heart fixed (g):

### Coronary artery stenosis by atherosclerosis (in percent):

| | |
|---|---|
| **Right coronary ostium:** | 0 |
| **Proximal third right coronary artery:** | 0 |
| **Middle third right coronary artery:** | 0 |
| **Distal third right coronary artery:** | 0 |
| **Left coronary ostium:** | 0 |
| **Left main coronary artery:** | 0 |
| **Proximal third left anterior descending coronary artery:** | 10 |
| **Middle third left anterior descending coronary artery:** | 0 |
| **Distal third left anterior descending coronary artery:** | 0 |
| **Proximal third left circumflex coronary artery:** | 0 |
| **Middle third left circumflex coronary artery:** | 0 |
| **Distal third left circumflex coronary artery:** | 0 |

### Cardiac Chambers and Valves:

| | |
|---|---|
| **Cardiac chambers:** | Unremarkable |
| **Tricuspid valve:** | Unremarkable |
| **Pulmonic valve:** | Unremarkable |
| **Mitral valve:** | Unremarkable |
| **Aortic valve:** | Unremarkable |
| **Right ventricular myocardium:** | No fibrosis, erythema, pathologic infiltration of adipose tissue or areas of accentuated softening or induration |
| **Left ventricular myocardium:** | No fibrosis, erythema, or areas of accentuated softening or induration |
| **Atrial septum:** | Unremarkable |
| **Ventricular septum:** | Unremarkable |
| **Right ventricular free wall thickness:** | 0.4 cm |
| **Left ventricular free wall thickness:** | 1.1 cm |
| **Interventricular septum thickness:** | 1.5 cm |

**Other heart comments:**

There is biatrial, biventricular dilation of the chambers of the heart.

### Aorta

| | |
|---|---|
| **Aorta examined:** | Yes |
| **Orifices of the major vascular branches:** | Patent |
| **Coarctation:** | No |
| **Vascular dissection:** | No |
| **Aneurysm formation:** | No |
| **Complex atherosclerosis:** | No |

| Case Number: | **2017-00219** | **Internal Examination** | **YAZZIE, CARLOS** |
|---|---|---|---|

| Other aortic pathology: | No |
|---|---|

**Vena Cava**

| Great vessels examined: | Yes |
|---|---|
| Vena cava and major tributaries: | Patent |

**RESPIRATORY SYSTEM**

| Lungs examined: | Yes |
|---|---|
| See separate Cardiovascular Pathology report: | No |
| See Evidence of Injury section: | No |
| See Evidence of Medical Intervention section: | No |
| See Postmortem Changes section: | No |
| Lung right (g): | 900 |
| Lung left (g): | 765 |
| Upper and lower airways: | Unobstructed, and the mucosal surfaces are smooth and yellow-tan |
| Pulmonary parenchyma color: | Dark red-purple |
| Pulmonary parenchyma congestion and edema: | Moderate amounts of blood and frothy fluid |
| Pulmonary trunk: | Free of saddle embolus |
| Pulmonary artery thrombi: | None |
| Pulmonary artery atherosclerosis: | None |
| Other airway and lung comments: | |

There is white frothy foam within the trachea and bronchi.

**HEPATOBILIARY SYSTEM**

| Liver examined: | Yes |
|---|---|
| See Evidence of Injury section: | No |
| See Evidence of Medical Intervention section: | No |
| See Postmortem Changes section: | No |
| Liver (g): | 2385 |
| Bile vol (mL): | 5 |
| Gallstones autopsy: | No |
| Gallstones autopsy desc: | |
| Hepatic parenchyma (color): | Yellow |
| Hepatic parenchyma (texture): | Micronodular cirrhosis |
| Hepatic vasculature: | Unremarkable and free of thrombus |
| Gallbladder: | Unremarkable |
| Gallstones: | None |
| Intrahepatic biliary tree: | Unremarkable |
| Extrahepatic biliary tree: | Unremarkable |

**GASTROINTESTINAL SYSTEM**

| Alimentary tract examined: | Yes |
|---|---|
| See Evidence of Injury section: | No |

| Case Number: | 2017-00219 | **Internal Examination** | YAZZIE, CARLOS |
|---|---|---|---|

| | |
|---|---|
| **See Evidence of Medical Intervention section:** | No |
| **See Postmortem Changes section:** | No |
| **Stomach contents vol (mL):** | 20 |
| **Stomach contents description:** | |
| Tan liquid | |
| **Appendix found:** | Yes |

### Esophagus

| | |
|---|---|
| **Course:** | Normal course without fistulae |
| **Mucosa:** | Gray-white, smooth and without lesions |

### Stomach

| | |
|---|---|
| **Mucosa:** | Usual rugal folds |
| **Pylorus:** | Patent and without muscular hypertrophy |

### Small Intestine

| | |
|---|---|
| **Luminal contents:** | Partially digested food |
| **Mucosa:** | Duodenal mucosa unremarkable; remaining bowel mucosa not examined |
| **Caliber and continuity:** | Appropriate caliber without interruption of luminal continuity |

### Colon

| | |
|---|---|
| **Luminal contents:** | Formed stool |
| **Mucosa:** | Rectal mucosa unremarkable; remaining colon mucosa not examined |
| **Caliber and continuity:** | Appropriate caliber without interruption of luminal continuity |

### Pancreas

| | |
|---|---|
| **Form:** | Normal tan, lobulated appearance |

### GENITOURINARY SYSTEM

| | |
|---|---|
| **Genitourinary system examined:** | Yes |
| **See Evidence of Injury section:** | No |
| **See Evidence of Medical Intervention section:** | No |
| **See Postmortem Changes section:** | No |

### Kidneys

| | |
|---|---|
| **Kidneys capsules:** | Thin, semitransparent |
| **Cortical surfaces:** | Smooth |
| **Cortices:** | Normal thickness and well-delineated from the medullary pyramids |
| **Calyces, pelves and ureters:** | Non-dilated and free of stones and masses |
| **Kidney right (g):** | 205 |
| **Kidney left (g):** | 210 |
| **Urine volume (mL):** | 300 |
| **Urine description:** | |
| clear yellow | |

### Urinary Bladder

| | |
|---|---|
| **Urinary bladder mucosa:** | Gray-tan and smooth |

### Male

| | |
|---|---|
| **Male:** | Yes |

| Case Number: | 2017-00219 | Internal Examination | | YAZZIE, CARLOS |
|---|---|---|---|---|

### Testicles

| | |
|---|---|
| Location: | Bilaterally intrascrotal |
| Size: | Unremarkable |
| Consistency: | Homogeneous |
| Other testicle comments: | |

### Prostate Gland

| | |
|---|---|
| Size: | Unremarkable |
| Consistency: | Homogeneous |
| Other prostate gland comments: | |

### RETICULOENDOTHELIAL SYSTEM

| | |
|---|---|
| Reticuloendothelial system examined: | Yes |
| See Evidence of Injury section: | No |
| See Evidence of Medical Intervention section: | No |
| See Postmortem Changes section: | No |

### Spleen

| | |
|---|---|
| Spleen (g): | 195 |
| Spleen parenchyma: | Moderately firm |
| Spleen capsule: | Intact |
| Spleen white pulp: | Prominent |

### Bone Marrow

| | |
|---|---|
| Color: | Red-brown, homogeneous and ample |

### Lymph Nodes

| | |
|---|---|
| Regional adenopathy: | No adenopathy |

### Thymus

| | |
|---|---|
| Thymus (g): | |
| Parenchyma: | Absent (involution by adipose tissue) |

### ENDOCRINE SYSTEM

| | |
|---|---|
| Endocrine system examined: | Yes |
| See Evidence of Injury section: | No |
| See Evidence of Medical Intervention section: | No |
| See Postmortem Changes section: | No |

### Pituitary Gland

| | |
|---|---|
| Size: | Normal |

### Thyroid Gland

| | |
|---|---|
| Position: | Normal |
| Size: | Normal |
| Parenchyma: | Homogeneous |

### Adrenal Glands

| | |
|---|---|
| Adrenal right (g): | |
| Adrenal left (g): | |

| Case Number: | 2017-00219 | **Internal Examination** | YAZZIE, CARLOS |
|---|---|---|---|

| Size: | Normal |
|---|---|
| Parenchyma: | Yellow cortices and gray medullae with the expected corticomedullary ratio |

### MUSCULOSKELETAL SYSTEM

| | |
|---|---|
| Musculoskeletal system examined: | Yes |
| See Evidence of Injury section: | No |
| See Evidence of Medical Intervention section: | No |
| See Postmortem Changes section: | No |
| Bony framework: | Unremarkable |
| Musculature: | Unremarkable |
| Subcutaneous soft tissues: | Unremarkable |

### ADDITIONAL COMMENTS

### Report Tracking

| Reported by: | Lauren Edelman, MD |
|---|---|
| Verified by: | Ian Paul MD on 3/22/2017 9:58:21 AM |
| Reviewed and approved by: | Ian Paul MD on 3/22/2017 10:01:47 AM |

| Case Number: | **2017-00219** | **Microscopy** | **YAZZIE, CARLOS** |

| Medical Investigator | Medical Investigator Trainee |
| Ian Paul MD | Lauren Edelman, MD |

**Microscopic description:**

Heart: Sections of the heart show unremarkable endocardial and epicardial surfaces. There is focally increased perivascular fibrosis predominantly in the papillary muscles. No inflammation is present.

Lungs: Multiple sections of the lungs show normal architecture without inflammation or fibrosis. Increased septal vascular congestion and intra-alveolar eosinophilic material is present. No polarizable material is identified.

Liver: A section of the liver shows profound macro- and microvesicular steatosis with bridging fibrosis. Increased mixed inflammatory infiltrate is present in the interface and periportal areas with focal hepatocyte necrosis.

Kidney: Sections of the right and left kidneys show mild autolysis without tubulointerstitial, glomerular, or vascular abnormality. No polarizable material is identified.

Brain: Sections of cortex, hippocampus and adjoining arachnoid membrane show no identifiable neoplastic or infectious process. There are scattered hypereosinophilic neurons with indistinct nucleoli in the hippocampus.

*Unless otherwise indicated sections are stained only with hematoxylin and eosin (H&E).

| Block | Tissue Location | Description | Stain |
|-------|-----------------|-------------|-------|
| A1 | Right lung, right kidney | | |
| A2 | Left lung, left kidney, liver | | |
| A3 | Brain | | |
| A4 | Heart | | |

**Report Tracking**

| Reported by: | Lauren Edelman, MD |
| Verified by: | Ian Paul MD on 3/22/2017 9:57:25 AM |
| Reviewed and approved by: | Ian Paul MD on 3/22/2017 10:01:47 AM |

**Case Number:**   **2017-00219**   **Ancillary Lab**   **YAZZIE, CARLOS**

| Medical Investigator | Medical Investigator Trainee |
|---|---|
| Ian Paul MD | Lauren Edelman, MD |

**Autopsy date:**   1/12/2017 9:21:00 AM

**Study type(s):**   vitreous chemistry

**Results of ancillary studies:**

I. Vitreous chemistry
    a. Sodium, 140 mmol/L
    b. Potassium, 12.2 mmol/L
    c. Chloride, 125 mmol/L
    d. VUN, <3 mg/dL
    e. Creatinine, <0.4 mg/dL
    f. Glucose, <3 mg/dL

### Report Tracking

| | |
|---|---|
| **Reported by:** | Lauren Edelman, MD |
| **Verified by:** | Ian Paul MD on 3/22/2017 9:55:35 AM |
| **Reviewed and approved by:** | Ian Paul MD on 3/22/2017 10:01:47 AM |

| Case Number: | 2017-00219 | **Procedural Notes** | YAZZIE, CARLOS |
|---|---|---|---|

| | |
|---|---|
| **Case Number:** | 2017-00219 |
| **Decedent Name:** | YAZZIE, CARLOS |
| **Pathologist:** | Ian Paul MD |
| **Fellow/Resident:** | Lauren Edelman, MD |
| **Date of Examination:** | 1/12/2017 9:21:00 AM |

### Morphology technician(s) present

| Yellow Sheet | Morphology Technician |
|---|---|
| Evidence | Brandon  Phinney |
| Radiology | Brandon  Phinney |
| Retention | Brandon  Phinney |
| LabOther | Brandon  Phinney |
| Identification | Brandon  Phinney |
| Autopsy | Brandon  Phinney |
| Attendees | Brandon  Phinney |
| Evidence | Brandon  Phinney |

### Morphology technician supervisor(s) present

| Yellow Sheet | Morphology Technician Lead |
|---|---|
| Identification | Michael Jarvis |
| Autopsy | Daniel Pitcher |
| Evidence | Michael Jarvis |
| Radiology | Michael Jarvis |
| Retention | Michael Jarvis |
| LabOther | Ian Paul MD |
| Attendees | Michael Jarvis |

### Autopsy attendees

**Other morphology technicians present:**

Michael Jarvis - Sr. Tech
Daniel Ward - Photo Tech

**Medical students present:**

Ian Richardson

| Case Number: | 2017-00219 | Procedural Notes | YAZZIE, CARLOS |
|---|---|---|---|

### Specimens obtained for laboratory testing

| | |
|---|---|
| HIV serology: | No |
| HIV spin and store: | Yes |
| HCV/HBV serology : | No |
| Influenza serology: | No |
| Other serology: | No |
| Freezer protocol: | No |
| DNA card: | Yes |
| Metabolic screen: | No |
| Cytogenetics: | No |
| Med-X protocol: | No |
| Urine dipstick: | No |
| Blood cultures (bacterial): | No |
| Lung cultures (bacterial): | No |
| CSF culture (bacterial): | No |
| Spleen culture (bacterial): | No |
| Stool culture (bacterial): | No |
| Other bacterial culture (specify): | |
| Mycobacterial culture (lung): | No |
| Mycobacterial culture (other): | No |
| Viral Cultures: | No |

### Approach to autopsy dissection

| | |
|---|---|
| Rokitansky evisceration: | No |
| Virchow evisceration: | No |
| Modified evisceration: | Yes |

| Case Number: | 2017-00219 | Procedural Notes | | YAZZIE, CARLOS |
|---|---|---|---|---|

**Special autopsy techniques**

| | |
|---|---|
| HIV serology: | No |
| Pericranial membrane removal: | No |
| Neck anterior dissection: | Yes |
| Neck posterior dissection: | No |
| Facial dissection: | No |
| Vertebral artery dissection (in situ): | No |
| Cervical spine removal: | No |
| Layered anterior trunk dissection: | No |
| Anterolateral rib arc dissection: | No |
| Back dissection: | No |
| Posterior rib arc dissection: | No |
| Extremity soft tissue dissection: | No |
| Eye enucleation: | No |
| Inner middle ear evaluation: | No |
| Maxilla or mandible resection: | No |
| Spinal cord removal (anterior): | No |
| Spinal cord removal (posterior): | No |
| Other dissection(s): | |

**Tissues retention**

| | |
|---|---|
| Stock jar with standard tissue retention: | Yes |
| Rib segment: | Yes |
| Pituitary gland: | Yes |
| Breast tissue (women only): | No |
| Brain retention: | No |
| Spinal cord retention: | No |
| Cervical spine retention: | No |
| Heart retention: | No |
| Heart-lung block retention: | No |
| Rib cage retention: | No |
| Long bone retention: | No |
| Other retention,specify: | |

**Disposition of tissues retained for extended examination**

| | |
|---|---|
| Specimen outcome: | Not applicable; no tissues were retained for extended examination. |

| Case Number: | 2017-00219 | **Procedural Notes** | YAZZIE, CARLOS |
|---|---|---|---|

Number of scene photos produced by the OMI

Scene Photos:                     24

Number of autopsy photos produced by the OMI

Autopsy Photos:                   24

Evidence collected

| | |
|---|---|
| FBI blood tube: | No |
| Blood spot card: | No |
| APD blood card: | No |
| Thumbprint: | Yes |
| Fingerprints: | No |
| Palmprints: | No |
| Print hold: | No |
| Oral swab: | No |
| Vaginal swab: | No |
| Anal swab: | No |
| Other swab: | No |
| Fingernails: | No |
| Scalp hair: | No |
| Pubic hair: | No |
| Pubic hair combing: | No |
| Projectile(s): | No |
| Retain clothing: | No |
| Retain valuables: | No |
| Retain trace evidence: | No |
| Retain body bag: | No |
| Retain hand bags: | No |
| Ligature: | No |

Other evidence retained:

Personal effects

| Property Type | Property Description | Property Detail |
|---|---|---|
| Fingerprints | Describe | One set |

Clothing

| Property Type | Property Description | Property Detail |
|---|---|---|
| Clothing | Shirt | n/a |
| Clothing | Underpants | n/a |
| Clothing | Shorts | n/a |



**NMS Labs**

3701 Welsh Road, PO Box 433A, Willow Grove, PA 19090-0437
Phone: (215) 657-4900  Fax: (215) 657-2972
e-mail: nms@nmslabs.com
Robert A. Middleberg, PhD, F-ABFT, DABCC-TC, Laboratory Director

**CONFIDENTIAL**

## Toxicology Report

**Report Issued**   01/26/2017 21:00

To:  **20141**
New Mexico Office of Medical Investigators
Attn: Yvonne A. Villalobos
1101 Camino de Salud NE- Ste B
Albuquerque, NM  87105

| | |
|---|---|
| **Patient Name** | YAZZIE CARLOS |
| **Patient ID** | 2017-00219 |
| **Chain** | 70811 |
| **Age 44 Y** | **DOB** 04/03/1972 |
| **Gender** | Male |
| **Workorder** | 17017471 |

**Page 1 of 3**

### Positive Findings:

| Compound | Result | Units | Matrix Source |
|---|---|---|---|
| Ethanol | 361 | mg/dL | 001 - Femoral Blood |
| Blood Alcohol Concentration (BAC) | 0.361 | g/100 mL | 001 - Femoral Blood |
| Caffeine | Positive | mcg/mL | 001 - Femoral Blood |

See Detailed Findings section for additional information

### Testing Requested:

| Analysis Code | Description |
|---|---|
| 8052B | Postmortem, Expanded, Blood (Forensic) |
| 8050U | Postmortem, Urine Screen Add-on (6-MAM Quantification only) |

### Specimens Received:

| ID | Tube/Container | Volume/ Mass | Collection Date/Time | Matrix Source | Miscellaneous Information |
|---|---|---|---|---|---|
| 001 | Gray Top Tube | 8.65 mL | 01/12/2017 | Femoral Blood | |
| 002 | Gray Top Tube | 7.75 mL | 01/12/2017 | Femoral Blood | |
| 003 | White Plastic Container | 58 mL | 01/12/2017 | Postmortem Urine | |

All sample volumes/weights are approximations.

Specimens received on 01/19/2017.



**CONFIDENTIAL**

| | |
|---|---|
| **Workorder** | 17017471 |
| **Chain** | 70811 |
| **Patient ID** | 2017-00219 |

Page 2 of 3

## Detailed Findings:

| Analysis and Comments | Result | Units | Rpt. Limit | Specimen Source | Analysis By |
|---|---|---|---|---|---|
| Ethanol | 361 | mg/dL | 10 | 001 - Femoral Blood | Headspace GC |
| Blood Alcohol Concentration (BAC) | 0.361 | g/100 mL | 0.010 | 001 - Femoral Blood | Headspace GC |
| Caffeine | Positive | mcg/mL | 0.20 | 001 - Femoral Blood | LC/TOF-MS |
| Ethanol | Confirmed | mg/dL | 10 | 001 - Femoral Blood | Headspace GC |

**Other than the above findings, examination of the specimen(s) submitted did not reveal any positive findings of toxicological significance by procedures outlined in the accompanying Analysis Summary.**

## Reference Comments:

1.  Caffeine (No-Doz) - Femoral Blood:

    Caffeine is a xanthine-derived central nervous system stimulant. It also produces diuresis and cardiac and respiratory stimulation. It can be readily found in such items as coffee, tea, soft drinks and chocolate. As a reference, a typical cup of coffee or tea contains between 40 to 100 mg caffeine.

    The reported qualitative result for this substance was based upon a single analysis only. If confirmation testing is required please contact the laboratory.

2.  . Ethanol (Ethyl Alcohol) - Femoral Blood:

    Ethyl alcohol (ethanol, drinking alcohol) is a central nervous system depressant and can cause effects such as impaired judgment, reduced alertness and impaired muscular coordination. Ethanol can also be a product of decomposition or degradation of biological samples. The blood alcohol concentrations (BAC) can be expressed as a whole number with the units of mg/dL or as a decimal number with units of g/100 mL which is equivalent to % w/v. For example, a BAC of 85 mg/dL equals 0.085 g/100 mL or 0.085% w/v of ethanol.

## Sample Comments:

001    Physician/Pathologist Name: Lauren Edelman, MD/IanPaul, MD

Chain of custody documentation has been maintained for the analyses performed by NMS Labs.

Unless alternate arrangements are made by you, the remainder of the submitted specimens will be discarded six (6) weeks from the date of this report; and generated data will be discarded five (5) years from the date the analyses were performed.

Workorder 17017471 was electronically signed on 01/26/2017 20:07 by:

William H. Anderson, Ph.D., F-ABFT
Forensic Toxicologist

## Analysis Summary and Reporting Limits:

All of the following tests were performed for this case. For each test, the compounds listed were included in the scope. The Reporting Limit listed for each compound represents the lowest concentration of the compound that will be reported as being positive. If the compound is listed as None Detected, it is not present above the Reporting Limit. Please refer to the Positive Findings section of the report for those compounds that were identified as being present.

Acode 52250B - Alcohols and Acetone Confirmation, Blood (Forensic) - Femoral Blood

-Analysis by Headspace Gas Chromatography (GC) for:



**CONFIDENTIAL**

| | |
|---|---|
| **Workorder** | 17017471 |
| **Chain** | 70811 |
| **Patient ID** | 2017-00219 |

**Page 3 of 3**

## Analysis Summary and Reporting Limits:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| Acetone | 5.0 mg/dL | Isopropanol | 5.0 mg/dL |
| Ethanol | 10 mg/dL | Methanol | 5.0 mg/dL |

Acode 8050U - Postmortem, Urine Screen Add-on (6-MAM Quantification only) - Postmortem Urine

-Analysis by Enzyme Immunoassay (EIA) for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| Amphetamines | 500 ng/mL | Fentanyl / Metabolite | 2.0 ng/mL |
| Barbiturates | 0.30 mcg/mL | Methadone / Metabolite | 300 ng/mL |
| Benzodiazepines | 50 ng/mL | Opiates | 300 ng/mL |
| Cannabinoids | 20 ng/mL | Oxycodone / Oxymorphone | 100 ng/mL |
| Cocaine / Metabolites | 150 ng/mL | Phencyclidine | 25 ng/mL |

Acode 8052B - Postmortem, Expanded, Blood (Forensic) - Femoral Blood

-Analysis by Enzyme-Linked Immunosorbent Assay (ELISA) for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| Barbiturates | 0.040 mcg/mL | Salicylates | 120 mcg/mL |
| Cannabinoids | 10 ng/mL | | |

-Analysis by Headspace Gas Chromatography (GC) for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| Acetone | 5.0 mg/dL | Isopropanol | 5.0 mg/dL |
| Ethanol | 10 mg/dL | Methanol | 5.0 mg/dL |

-Analysis by High Performance Liquid Chromatography/
Time of Flight-Mass Spectrometry (LC/TOF-MS) for: The following is a general list of compound classes included
in this screen. The detection of any specific analyte is concentration-dependent. Note, not all known analytes in
each specified compound class are included. Some specific analytes outside these classes are also included.
For a detailed list of all analytes and reporting limits, please contact NMS Labs.
Amphetamines, Anticonvulsants, Antidepressants, Antihistamines, Antipsychotic Agents, Benzodiazepines, CNS
Stimulants, Cocaine and Metabolites, Hallucinogens, Hypnosedatives, Hypoglycemics, Muscle Relaxants, Non-
Steroidal Anti-Inflammatory Agents, Opiates and Opioids.

**EXHIBIT 2**

BARBER & BORG, LLC
Carlisle Blvd, NE, Suite C
P.O. Box 30745
querque, NM 87190-0745
884-0004 / Fax: (505) 884-0077
arberborg.com; Kayla@barberborg.com

October 31, 2018

ail: **7016 3560 0001 0304 9133**

rtment
of the Interior
Department of the Interior
1849 C Street NW
Washington, D.C. 20240

RE:   **Ernestine Yazzie on behalf of the Estate of Carlos Thomas Yazzie**

Dear Sir/Madam:

Enclosed is an Amended Tort Claim Notice filed for Ernestine Yazzie on
behalf of the Estate of Carlos Thomas Yazzie, deceased. We would appreciate it if
you would forward this notice to the appropriate individuals for processing.

Sincerely,

**BARBER & BORG, LLC**

Kayla Smith

Buffington



**EXHIBIT 3**

**BARBER & BORG LLC**
**PO Box 30745**
**Albuquerque, NM 87190**

7016 3560 0001 0304 9133
7016 3560 0001 0304 9133

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Sent To   Dept Of the Interior
Street and Apt. No., or PO Box No.  1849 C Street NW
City, State, ZIP+4®  Washington, D.C. 20240

Postmark
Here

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

Dept Of
The Interior
1849 C Street NW
Washington, D.C. 20240

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ryan Zinke, Secretary
of the Department of the
Interior
1849 C Street NW
Washington, D.C. 20240

9590 9402 3064 7124 1244 73

2. Article Number (Transfer from service label)

7016 3560 0001 0304 9133

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery ($500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt