IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ERNESTINE YAZZIE AS WRONGFUL
DEATH PERSONAL REPRESENTATIVE
OF CARLOS THOMAS YAZZIE, DECEASED,**

        **Plaintiffs,**

        v.                                        No. CIV 19-518 JB/KK

**UNITED STATES OF AMERICA,**

        **Defendants.**

## UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AND, IN THE ALTERNATIVE, MOTION TO DISMISS CERTAIN CLAIMS, AND MEMORANDUM IN SUPPORT

Defendant United States of America, by and through its attorneys, respectfully submits this motion for summary judgment, pursuant to Fed. R. Civ. P. 56(b), and supporting memorandum. Plaintiff's Complaint (Doc. 1) ("Complaint") was filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, and alleges that the United States negligently caused the death of Carlos Yazzie. Plaintiff's claims should be dismissed because Plaintiff has failed to offer admissible evidence that anything Defendants purportedly did, or failed to do, caused the death of Carlos Yazzie, thus Plaintiff cannot establish negligence for purposes of the FTCA.

In the alternative, the Court should dismiss Plaintiff's loss of consortium claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), because Plaintiff failed to exhaust her administrative remedies for those claims.

Pursuant to D.N.M. LR-Civ 7.1(a), counsel for Plaintiff was notified of the filing of this motion and the motion is opposed.

## PLAINTIFF'S COMPLAINT

This is a negligence action brought pursuant to the FTCA. The Complaint alleges that on January 11, 2017, Mr. Yazzie was arrested by Navajo Nation Police Department ("NNPD") officers, and that he was subsequently jailed by the Navajo Nation Department of Corrections ("NNDC"). It is further alleged that on January 11, 2017, six hours after his arrest, Mr. Yazzie died due to acute ethanol (alcohol) poisoning while in custody of the NNDC. Plaintiff claims that Defendant is responsible for Mr. Yazzie's death because the Navajo Nation provides police and jail services pursuant to an Indian Self-Determination and Educational Assistance Act ("ISDEAA") contract with the United States Department of the Interior. Plaintiff claims that NNPD officers negligently failed to medically assess, observe, and monitor Mr. Yazzie. Plaintiff also claims that the Navajo Nation Division of Public Safety ("NNDPS") and the NNDC negligently failed to train and supervise personnel in the dangers of acute ethanol intoxication, and failed to make, adopt, and enforce standards to avoid death from acute ethanol poisoning. Plaintiff alleges that Defendant's negligence was the direct and proximate cause of Mr. Yazzie's death. In her administrative claim, Plaintiff sought $1,500,000 in damages.

## STATEMENT OF UNDISPUTED MATERIAL FACTS ("UMF")

For the purposes of this Motion, the following material facts are undisputed:

1. On January 11, 2017, Mr. Yazzie was arrested by officers of the NNPD. Doc. 1 ¶ 17.

2. On January 11, 2017, Mr. Yazzie died while in jail. Doc. 1 ¶ 25.

3. The NNPD and the NNDC are funded pursuant to Pub. L. 93-638 contracts ("638 Contracts") between the Navajo Nation and the United States Department of the Interior, Bureau of Indian Affairs ("BIA"). Doc. 1 ¶ 12.

4. Plaintiff filed an administrative claim Standard Form 95 ("SF-95") on October, 29, 2018, in her name, with the following as her "BASIS OF CLAIM": "Claimant is the surviving spouse of Carlos Tom Yazzie, the decedent herein. Decedent was childless at the time of his death. This claim is brought against the United States, pursuant to a contract or contracts between the United States and the Navajo Nation for the provision of law enforcement and detention services on the Navajo Nation pursuant to the Indian Self-Determination Act. It is believed that all actions of the Navajo Nation complained of were pursuant to the Indian Self-Determination Act and the contract above noted." Doc. 1 at 9.

5. Plaintiff attached a narrative to her SF-95 titled "#8 Basis of Claim Continued" stating that Carlos Yazzie was arrested, jailed and subsequently found dead in his jail cell, and "[a]ll negligent acts and omissions related to the stated claim are hereby included in the tort notice, including, if appropriate, failure to transfer in a safe, reasonable, and timely manner, failure to communicate, failure to assess, failure to monitor, negligent hiring, training, supervision, and retention." Doc. 1 at 11-12.

6. Plaintiff's SF-95 contains the following in the "PERSONAL INJURY/WRONGFUL DEATH" box: "See #8: Basis of Claim. See also enclosed autopsy report and funeral itemization." Doc. 1 at 9.

7. Plaintiff's SF-95 contains a claim in the amount of "1,500,000" in the "WRONGFUL DEATH" box, the amount of "0.00" in the "PERSONAL INJURY" box, and the amount of "1,500,000" in the "TOTAL" box. Doc. 1 at 9.

8. Plaintiff's Complaint is brought by Ernestine Yazzie "AS WRONGFUL DEATH PERSONAL REPRESENTATIVE OF CARLOS THOMAS YAZZIE, DECEASED" and asserts

claims for "Negligence" and "Negligent Training, Administration and Supervision." Doc. 1 ¶¶ 26-38.

9. Plaintiff's Negligence claim asserts that "law enforcement and jail personnel who arrested and detained [Carlos Yazzie] negligently failed to observe him and failed to secure medical assessment or treatment for him when they knew or should have known he required medical attention or assessment" and "as a direct and proximate result of the actions, and inactions of the law enforcement personnel who arrested and detained Carlos Yazzie, he died of acute ethanol intoxication." Doc. 1 ¶ 30.

10. Plaintiff's "Negligent Training, Administration and Supervision" claim asserts that the NNDPS NNDC had a "duty to train their respective officers and employees in the dangers presented by acute ethanol intoxication, and to adopt and enforce policies designed to prevent death due to ethanol intoxication" and "failure to train and supervise in the dangers of acute ethanol intoxication and to make, adopt and enforce standards to prevent the same, Carlos Yazzie died." Doc. 1 ¶¶ 33-38.

11. In her Complaint, Plaintiff requests for herself damages resulting from the death of Carlos Yazzie, stating "Plaintiff has suffered and will continue in the future to suffer losses and damages, including but not limited to; the loss of Carlos Yazzie's love, affection, companionship, care, protection, and guidance; pain, grief, sorrow, anguish, stress, shock an (sic) mental suffering; loss of income and services; and the expense of funeral and burial." Doc. 1 ¶ 40.

12. Plaintiff's only evidence of causation comes from the report of "corrections expert" Cameron Lindsay. Report of Cameron Lindsay Consulting Services, LLC, attached as Exhibit A.

13. In his report, Cameron Lindsay states that he has a Bachelor of Science degree in Criminal Justice, a Master of Arts degrees in Counseling, and a Master of Science degree in Safety,

and that his "opinions are rendered to a reasonable degree of professional certainty." Ex. A at 11-12.

14. In his report, Mr. Lindsay lists standards and procedures purportedly taken from the United States Department of Justice's Federal Bureau of Prisons manual titled "Detoxification of Chemically Dependent Inmates", the American Correctional Association's "Core Jail Standards", and the National Commission on Corrections Health Care manual however, none of these standards and procedures are applicable to Navajo Department of Corrections facilities, including the Shiprock corrections facility. Ex. A at 17-21; Declaration of Delores Greyeyes attached as Exhibit B.

15. Mr. Lindsay opines "[i]t *appears* that the death of Carlos Yazzie occurred as a direct result, and predictable result, of the violation of these standards," without identifying specific applicable standards, and further opines that "Mr. Yazzie['s] serious health need was not met, which led to his death," again without explanation. Ex. A at 17, 20 (emphasis added).

16. Mr. Lindsay is not a medical doctor, does not undertake medical analysis of the cause of Mr. Yazzie's death, and does not state to a medical degree of probability that Defendant's actions or inactions would have changed Carlos Yazzie's outcome. Ex. A 3-21.

17. Defendant United States' expert Brandon Warrick, MD, wrote an expert report stating "[g]iven the facts that: 1) on multiple occasions prior to his death, Mr. Yazzie had survived blood alcohol concentrations higher than what it was when he died, including within two weeks of his death, 2) Mr. Yazzie's level of intoxication did not alarm his family, police, or correctional staff, and 3) death from acute alcohol intoxication is rare and more likely the result of trauma or a combination in an overdose, Mr. Yazzie did not die simply because of acute alcohol intoxication

alone. Instead Mr. Yazzie most likely died naturally from chronic drinking or a cardiac dysthymia." Declaration and Report of Brandon J. Warrick, MD, attached as Exhibit C, at 11.

18. Dr. Warrick explains that "[a]lcohol intoxication follows a progressive spectrum of signs and symptoms progressing to death . . . [i]n people who die from acute alcohol intoxication, they have progressed past being able to walk and being able to have discussions about their surroundings. People nearing death are comatose and unable to be aroused even in response to pain." Ex. C at 8-9.

19. Dr. Warrick notes that, "[a]ccording to police, Mr. Yazzie's family, and correctional officers, Mr. Yazzie was able to walk, talk, and, although argumentative, able to follow instructions on the morning of January 11, 2017. [He] was moderately intoxicated [and] was not described as having symptoms of severe intoxication including being comatose, passed out, difficult to arouse, no breathing, cyanotic." Ex. C at 10.

20. Dr. Warrick explains that "Mr. Yazzie was an elite drinker, and had a much higher tolerance to the acute effects of alcohol than the general population" and "[e]mergency medical intervention was not needed or used by multiple clinicians treating Mr. Yazzie, even when Mr. Yazzie was found to have alcohol concentration levels in the range found at the time of his death." In fact, on December 31, 2016, eleven days prior to his death, Mr. Yazzie presented to the emergency department with an alcohol concentration level of 0.417 g/dL, was seen by a doctor Boarded in Emergency Medicine and Addiction Medicine, and was discharged with "no concerns noted about Mr. Yazzie's alcohol level and no need for any acute interventions." Ex. C at 10.

21. Dr. Warrick opines that "had Mr. Yazzie presented to the ED [emergency department] prior to booking, Mr. Yazzie most likely would have been evaluated and quickly discharged from the ED" and "the ED could not have predicted Mr. Yazzie's death on the night in

question, and would have considered him safe to be discharged" thus, "[t]he ED predictably would have cleared him for jail without any acute intervention for acute alcohol intoxication." Ex. C at 11-12.

22. Even if Mr. Yazzie had been kept in the hospital for observation, one cannot say to a reasonable degree of probability that he would have survived. *See* Ex. C at 11.

## STANDARD OF REVIEW

A. Summary Judgment

Summary judgment is proper "if the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the moving party has the burden of demonstrating the absence of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). The moving party may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. *See* Fed. R. Civ. P. 56(c)(1)(b); *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001). If the moving party meets its burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's claims. *Shapolia*, 992 F.2d at 1036. In attempting to establish the existence of a material factual dispute, the opposing party may not rely upon mere allegations in the pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a material factual dispute exists. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, n.11 (1986).

If a party fails to make a showing sufficient to establish the existence of an element essential to her case, and on which that party will bear the burden of proof at trial, there can be "no genuine issue as to any material fact," since a failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *See Celotex Corp.*, 477 U.S. at 322-23 (1986). The moving party is therefore entitled to a judgment as a matter of law. *Id.*

B.  <u>Subject Matter Jurisdiction</u>

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." When making a Rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends by relying on affidavits or any other evidence properly before the court. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). A court has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts. *Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003); *Jenkins v. Educ. Credit Mgmt. Corp.*, 212 F. App'x 729, 733 (10th Cir. 2007). In such instances, a court's reference to evidence outside pleadings does not convert the motion to dismiss to a Rule 56 motion for summary judgment. *Davis*, 343 F.3d at 1296, *quoting Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995); *Jenkins*, 212 F. App'x at 733 (court's reference to evidence outside the pleadings does not convert a 12(b)(1) motion to dismiss to a Rule 56 motion for summary judgment).

## LEGAL STANDARD

"In 1946, Congress enacted the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA provides the exclusive remedy for tort actions against the United States and grants jurisdiction to district courts over such actions. 28 U.S.C. § 1346(b). However, the United States can only be held liable "in the same manner and to the same extent as a private individual

under like circumstances." *Id.*; § 2674. Further, "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency[.]" 28 U.S.C. § 2675(a). And, the FTCA does *not* waive the United States' sovereign immunity for the exercise, performance, or failure to exercise or perform "a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

Plaintiff's complaint must be dismissed because Plaintiff is unable to establish negligence under New Mexico state law for purposes of the FTCA. *See* 28 U.S.C. § 1346(b). In the alternative, Plaintiff's loss of consortium claims must be dismissed because they were not sufficiently presented to the appropriate Federal agency pursuant to § 2675(a) prior to bringing suit against the United States.

## LEGAL ARGUMENT

### I. Defendant Is Entitled to Summary Judgment on Plaintiff's Claims

The FTCA applies only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Under New Mexico law, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause of the plaintiff's damages. *See Herrera v. Quality Pontiac,* 2003–NMSC–018, ¶ 6, 134 N.M. 43, 47–48, 73 P.3d 181, 185–86. Plaintiff must establish all elements of a negligence claim in order to prevail. *See Coffey v. United States*, 906 F. Supp. 2d 1114, 1187-88 (D.N.M. 2012) (Plaintiff could not recover against United States under FTCA where, even if Plaintiff could establish duty and breach, she could not establish government's actions or inactions were cause-in-fact of inmates death).

"In New Mexico, as is universally the case, a tort plaintiff must demonstrate the defendant's actions caused the plaintiff's injury." *Wilcox v. Homestake Mining Co.*, 619 F.3d 1165, 1166 (10th Cir. 2010); *see Dahlberg v. MCT Transp., LLC*, 571 F.App'x 641, 655 (10th Cir. 2014) (causation is a required element of negligent training and negligent supervision claims under New Mexico law). Plaintiff must demonstrate some negligent act or omission by the defendant caused in fact, or was the "but for" cause of, plaintiff's injury. *Wilcox*, 619 F.3d at 1166. An act or omission is a "cause" of injury to another person if it "contributes to bringing about the injury and if the injury would not have occurred without it." UJI 13-305, NMRA 2013. When causation cannot be determined by reference to common knowledge, expert testimony is required. *Mascarenas v. Gonzales*, 1972-NMCA-062, 83 N.M. 749, 752, 497 P.2d 751, 754 ("Should the condition be such that knowledge about it is peculiarly within the knowledge of medical men, then a court should not allow a jury to conjecture or speculate about the matter."). "The cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion." *Woods v. Brumlop*, 1962-NMSC-133, ¶ 15, 71 N.M. 221, 225, 377 P.2d 520, 523.

Plaintiff alleges that "law enforcement and jail personnel who arrested and detained [Carlos Yazzie] negligently failed to observe him and failed to secure medical assessment or treatment for him when they knew or should have known he required medical attention or assessment" and "as a direct and proximate result of the actions, and inactions of the law enforcement personnel who arrested and detained Carlos Yazzie, he died of acute ethanol intoxication." (UMF ¶ 9). Plaintiff further alleges that NNDPS NNDC had a "duty to train their respective officers and employees in the dangers presented by acute ethanol intoxication, and to adopt and enforce policies designed to prevent death due to ethanol intoxication" and "failure to train and supervise in the dangers of

acute ethanol intoxication and to make, adopt and enforce standards to prevent the same, Carlos Yazzie died." (UMF ¶ 10). However, Plaintiff does not offer proof of causation as required to establish any of her claims under the FTCA. Plaintiff does not offer medical expert testimony or proof "that a causal connection is more probable than not." *See Woods*, 377 P.2d at 523; *Wilcox*, 619 F.3d at 1169.

Instead, Plaintiff provides a report[1] from "corrections expert" Cameron Lindsay, who states that he has a Bachelor of Science degree in Criminal Justice, a Master of Arts degrees in Counseling, and a Master of Science degree in Safety, and renders "opinions [ ] to a reasonable degree of professional certainty." (UMF ¶¶ 12-13). Mr. Lindsay lists standards and procedures purportedly taken from the United States Department of Justice's Federal Bureau of Prisons manual titled "Detoxification of Chemically Dependent Inmates", the American Correctional Association's "Core Jail Standards", and the National Commission on Corrections Health Care manual however, none of these standards and procedures are applicable to Navajo Department of Corrections facilities, including the Shiprock corrections facility. (UMF ¶ 14). Mr. Lindsay opines "[i]t *appears* that the death of Carlos Yazzie occurred as a direct result, and predictable result, of the violation of these standards," without identifying specific applicable standards, and states that "Mr. Yazzie['s] serious health need was not met, which led to his death." (UMF ¶ 15).

However, Mr. Lindsay does not, and cannot, offer any proof to a medical degree of probability that the actions or inactions of Defendants' affected Mr. Yazzie's outcome. (UMF ¶¶ 12-16). Mr. Lindsay is not a medical doctor, does not undertake medical analysis of the cause of Mr. Yazzie's death, and does not state to a medical degree of probability that Defendant's actions

---

1 The United States is filing a Motion to Exclude Plaintiff's Expert Report concurrently with this Motion.

or inactions would have changed Carlos Yazzie's outcome. (UMF ¶¶ 12-16). Mr. Lindsay's opinions are rendered to a reasonable degree of "professional certainty," rather than to a reasonable degree of medical probability. (UMF ¶ 13). Therefore, Plaintiff does not offer the required "proof to a reasonable degree of medical probability" that Defendant's alleged negligence directly caused Mr. Yazzie's death. *See Wilcox*, 619 F.3d at 1169; *Woods*, 377 P.2d at 523.

In fact, Plaintiff *cannot* establish that Defendant's alleged negligence caused Mr. Yazzie's death to a reasonable degree of medical probability. Defendant's expert, Dr. Brandon Warrick, is a medical doctor and wrote an expert report concluding that "[g]iven the facts that: 1) on multiple occasions prior to his death, Mr. Yazzie had survived blood alcohol concentrations higher than what it was when he died, including within two weeks of his death, 2) Mr. Yazzie's level of intoxication did not alarm his family, police, or correctional staff, and 3) death from acute alcohol intoxication is rare and more likely the result of trauma or a combination in an overdose, Mr. Yazzie did not die simply because of acute alcohol intoxication alone. Instead Mr. Yazzie most likely died naturally from chronic drinking or a cardiac dysthymia." (UMF ¶ 17).

Dr. Warrick explains that "[a]lcohol intoxication follows a progressive spectrum of signs and symptoms progressing to death . . . [i]n people who die from acute alcohol intoxication, they have progressed past being able to walk and being able to have discussions about their surroundings. People nearing death are comatose and unable to be aroused even in response to pain." (UMF ¶ 18). Dr. Warrick notes that, "[a]ccording to police, Mr. Yazzie's family, and correctional officers, Mr. Yazzie was able to walk, talk, and, although argumentative, able to follow instructions on the morning of January 11, 2017. [He] was moderately intoxicated [and] was not described as having symptoms of severe intoxication including being comatose, passed out, difficult to arouse, no breathing, cyanotic." (UMF ¶ 19). Dr. Warrick explains that "Mr. Yazzie

was an elite drinker, and had a much higher tolerance to the acute effects of alcohol than the general population" and "[e]mergency medical intervention was not needed or used by multiple clinicians treating Mr. Yazzie, even when Mr. Yazzie was found to have alcohol concentration levels in the range found at the time of his death." (UMF ¶ 20). In fact, on December 31, 2016, eleven days prior to his death, Mr. Yazzie presented to the emergency department with an alcohol concentration level of 0.417 g/dL, was seen by a doctor Boarded in Emergency Medicine and Addiction Medicine, and was discharged with "no concerns noted about Mr. Yazzie's alcohol level and no need for any acute interventions." (UMF ¶ 20). Dr. Warrick opines that "had Mr. Yazzie presented to the ED [emergency department] prior to booking, Mr. Yazzie most likely would have been evaluated and quickly discharged from the ED" and "the ED could not have predicted Mr. Yazzie's death on the night in question, and would have considered him safe to be discharged" thus, "[t]he ED predictably would have cleared him for jail without any acute intervention for acute alcohol intoxication." (UMF ¶ 21). Even if Mr. Yazzie had been kept in the hospital for observation, one cannot say to a reasonable degree of probability that he would have survived. (UMF ¶ 22).

It cannot be established to a medical degree of probability that anything Defendants purportedly did, or failed to do, caused the death of Carlos Yazzie. Mr. Lindsay's report does not offer proof otherwise and is not sufficient to defeat this motion for summary judgment. *Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1304 (8th Cir. 1993) ("Conclusory affidavits, even from expert witnesses, do not provide a basis upon which to deny motions for summary judgment."); *Benedict v. Zimmer, Inc.*, 405 F. Supp. 2d 1026, 1034-35 (N.D. Iowa 2005) (expert's testimony cannot defeat summary judgment when the "testimony is conclusory as to the existence of a defect or causation [and the] conclusions are not supported by specific facts from the record and do not contain any analysis."); *Reno v. United States*, No. CIV 02-0808 MREA/KSC, 2007 WL 602094,

at *4 (Feb. 15, 2007), *aff'd*, 283 F. App'x 502 (9th Cir. 2008) (declaration insufficient to defeat summary judgment when the expert states he reviewed the plaintiff's medical records, but provided "no explanation of his methodology, no explanation of acceptable medical practices with respect to the type of treatment [the plaintiff] received, and no basis for his statement that 'medical probability' suggests a breach or causation here"). "Absent admissible evidence on causation, summary judgment is appropriate." *Ronwin v. Bayer Corp.*, 332 F. App'x 508, 514 (10th Cir. 2009).

Plaintiff cannot establish that Defendant's actions or inactions caused Mr. Yazzie's death, therefore summary judgment is appropriate.

## II. Plaintiff's Loss of Consortium Claim Must be Dismissed for Failure to Exhaust

"The FTCA's jurisdictional statute, 28 U.S.C. § 2675(a), requires a would-be tort plaintiff to file '(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim.'" *Benally v. United States*, 735 F.App'x 480, 484 (10th Cir. 2018) (citing *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016)). The FTCA's "eminently pragmatic" written claim-presentation requirement requires that the written statement provide "due notice that the agency should investigate the possibility of particular (potentially tortious) conduct." *Trentadue v. United States*, 397 F.3d 840, 852 (10th Cir. 2005). The purpose of this requirement is "to give the agency notice of the claim, an opportunity to investigate, and a chance to settle the claim prior to litigation." *Lopez v. United States*, 823 F.3d 970, 977 (10th Cir. 2016). A plaintiff who sues under the FTCA must comply with the statute's administrative notice requirements, which are jurisdictional, cannot be waived, and must be strictly construed. *Trentadue*, 397 F.3d at 852; *Boehme v. U.S. Postal Serv.*, 343 F.3d 1260, 1262 (10th Cir. 2003). If a plaintiff's claims are not sufficiently presented to the appropriate Federal agency

pursuant to § 2675(a) prior to bringing suit against the United States, those claims must be dismissed for lack of subject matter jurisdiction. *Staggs v. United States ex rel. Dep't Health & Human Servs.*, 425 F.3d 881, 885 (10th Cir. 2005); *Benally*, 735 F. App'x at 492.

In the case of tort claims arising from a death in New Mexico, a claim for loss of consortium is a separate cause of action distinct from a claim for wrongful death. *Haceesa v. United States*, 309 F.3d 722, 734 (10th Cir. 2002); *Skeet v. United States*, No. CIV 10-0107 RB/WDS, 2012 WL 12884644, at *3 (D.N.M. Jan. 23, 2012). "Under the New Mexico Wrongful Death Act, the personal representative of a deceased person may bring a tort action for wrongful death. N.M. Stat. Ann. §41-2-3. Damages may be awarded in such an action for, among other things, decedent's conscious pain and suffering and medical and related care between the date of injury and death. *See generally* N.M. State. Ann. §41-2-1." *Haceesa*, 309 F.3d at 734. "However, loss of consortium damages may not be awarded in such an action to the spouse of the decedent" *Id.* (citing *Romero v. Byers,* 872 P.2d 840, 842 (1994)). "Instead, the spouse of the decedent must bring a separate cause of action in his or her individual capacity to recover such damages." *Id.*

Consequently, in FTCA actions where Plaintiff seeks relief for both wrongful death and loss of consortium, each claim must have been presented clearly and separately in Plaintiff's SF-95. *Haceesa*, 309 F.3d at 734 (where a plaintiff seeks relief for both wrongful death and loss of consortium, "the question is whether the administrative forms [] gave the Government specific notice that the claimants intended to assert causes of action on their own behalf (e.g., a claim by [Plaintiff] on her own behalf for loss of consortium) and on behalf of the Estate."). And, if Plaintiff's loss of consortium claims are not presented clearly and separately in the SF-95, those claims must be dismissed. *Skeet*, 2012 WL 12884644, at *3 (plaintiff's loss of consortium claim under the FTCA dismissed for lack of subject matter jurisdiction, where plaintiff did not file

separate administrative claim for loss of consortium as "loss of consortium is a separate cause of action under New Mexico law"); *McNeese v. United States*, No. CIV 17-1164 KWR/KK, 2020 WL 365038, at *4 (D.N.M. Jan. 22, 2020) (holding that a claim for loss of consortium must be explicit under the notice and exhaustion requirements of 28 U.S.C. § 2675(a) of the Federal Tort Claims Act); *Pipkin v. United States Postal Serv.*, 951 F.2d 272, 273 (10th Cir. 1991) (in that the administrative claims made no reference to loss of consortium, Plaintiff did not serve to exhaust such a claim and the Court lacks subject matter jurisdiction over that claim).

In her Complaint, Plaintiff seeks damages for loss of consortium. (UMF ¶ 11). However, Plaintiff's SF-95 and attached narrative fail to describe any facts that could have put the agency on notice of her individual claim for loss of consortium, as required by 28 U.S.C. § 2675(a). (UMF ¶¶ 4-7). Plaintiff's SF-95 describes her "Basis of Claim" the treatment of Ms. Yazzie and his resulting death but does not include mention of her own injuries. (UMF ¶¶ 4-6). Plaintiff's SF-95 contains a claim in the amount of "1,500,000" in the "WRONGFUL DEATH" box and "1,500,000" in the "TOTAL" box (UMF ¶ 7). Plaintiff did not include a sum certain in the "PERSONAL INJURY" box. (UMF ¶ 7). Plaintiff's SF-95 claim classifications are significant because they indicate that she was not filing a claim for loss of consortium. *See McNeese*, 2020 WL 365038, at *4 ("because she only sought wrongful death damages, it appeared that Plaintiff was only asserting a wrongful death claim"). In fact, reading Plaintiff's SF-95 and narrative as a whole, it appears that she was only asserting a wrongful death claim. *See Id.* (where Plaintiff's SF-95 sought wrongful death damages and no personal injury damages, and failed to set forth facts underlying loss of consortium claims or injury Plaintiff suffered, it appeared that Plaintiff was only asserting a wrongful death claim).

The undisputed facts show that Plaintiff failed to provide satisfactory notice under § 28 U.S.C. § 2675(a) of her loss of consortium claims, therefore those claims must be dismissed. *McNeese*, 2020 WL 365038, at *4 (Plaintiff's loss of consortium claims dismissed, where SF-95 did not mention Plaintiff's own injuries or include a sum certain for personal injury damages); *Skeet,* 2012 WL 12884644, at *3 (court lacked subject matter jurisdiction over loss of consortium claim, where no administrative claims mentioned loss of consortium or requested personal injury damages); *Pipkin v. U.S. Postal Serv*., 951 F.2d 272, 276 (10th Cir. 1991) (by leaving the "Personal Injury" space blank in his administrative tort claim notice, the decedent's son indicated that he was not pursuing a personal injury claim and his sole claim against the government was for wrongful death).

## **CONCLUSION**

For the reasons discussed in this memorandum, the United States respectfully submits that the Court should grant Defendant's Motion for Summary Judgment. In the alternative, the Court should dismiss Plaintiff's loss of consortium claims for lack of jurisdiction.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*/s/ Cassandra Casaus Currie 9/16/20*
CASSANDRA CASAUS CURRIE
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274
cassandra.currie@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on September 16, 2020, I filed the foregoing pleading electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing:

  Forrest G. Buffington: forrest@barberborg.com

*/s/ Cassandra Casaus Currie 9/16/20*
CASSANDRA CASAUS CURRIE
Assistant United States Attorney